Opinion delivered May 22, 1889.

---

No. 6331.

John Kegans *v.* The State.

1. Theft—Conspiracy—Charge of the Court.—On a trial for theft the trial court charged the jury as follows: "When two or more persons conspire together to commit an offense, and each carries out the part agreed to be done by him, and such offense is actually committed, then all parties to such an agreement are equally guilty of such offense; and if the jury believe from the evidence, beyond a reasonable doubt that the defendant fraudulently took the property charged to have been stolen, as given you in charges Nos. 1 and 2, and that defendant and others agreed or conspired, before or after such taking, to prove a purchase or pretended purchase of said cattle, either before or after such taking, this would be no defense to such fraudulent taking." *Held* that, under the proof on the trial (for which see the statement of the case), the charge was not erroneous.

2. Same.—See the opinion for the substance of proposed testimony for th defense *held*, in view of the other proof in the case, to have been neously excluded.

Appeal from the District Court of Haskell. Tried below before the Hon. J. V. Cockrell.

The first count of the indictment charged the theft, and the second the illegal branding, of two head of cattle, the property

of S. J. Pate. The conviction was had upon the second count, the penalty assessed being a term of two years in the penitentiary.

Hiram Gilbert was the first witness for the State. He testified that in October, 1886, he was an employe of the "LIL. outfit," at that time engaged in a "round-up" on Lake creek, in Haskell county. Some time during the said October, the defendant came to the camp of said "outfit," and asked the boys to look out for a JSP cow, which, he said, he either had bought. or traded for. The witness could not now remember whether defendant named J. S. Pate or Mike Kegans as the party from whom he "got" the said cow. That evening's round-up included a JSP cow and calf. Defendant put his brand,—the letter D above a bar,—on the cow, but witness could not remember, whether or not he branded the calf, nor did he remember whether or not the defendant barred out the JSP brand. This occurred on Lake creek in Haskell county, Texas, in October, 1886.

William Word testified, for the State, that he was one of the "round-up" party referred to by the witness Gilbert. Two of the animals included in one day's "round-up" were a JSP cow and her calf. Defendant claimed the said cow and put his brand on her. The same brand was put on the calf, but witness could not say that the defendant was the man who put it on the calf. Witness asked the defendant where he got the cow, and he replied that he got her from Bud Pate. On cross examination the witness said that it was his recollection that defendant. said he got the cow from Bud Pate, and that he could not remember that defendant mentioned Mike Kegans's name. As a rule it was commonly understood on the range that a person purchasing a cow on the range gets the calf of that cow if it transpires that she has one. Re-examined, and subsequently recalled by request of the jury, the witness stated positively that defendant told him that he got the cow from J. S. Pate, and did not mention Mike Kegans's name in that connection.

S. J. Pate testified, for the State, that he lived in Shackelford. county, Texas. The witness, his wife and their children owned the JSP brand of cattle, which said cattle were under the care, management and control of the witness. Witness had never given authority to any person to sell or use any of said cattle. In June, 1887, the witness learned, through a letter from his wife, that defendant had branded a JSP cow, and he went to

Haskell county to see about it. On reaching the town of Haskell, witness met Mike Kegans, whom he told that he wanted to see defendant. Mike went off and in a few minutes returned with defendant. Upon meeting witness the defendant asked: "Did you get that letter about the JSP cow of yours that I branded?" Witness replied in the negative, when he asked witness what would satisfy him for the cow and calf. Witness replied: "Another cow and calf." The defendant then agreed to give witness a certain cow and calf, and took witness to see the animals. Witness rejected those animals, and Mike Kegans agreed to pay witness for his cow and calf by giving him three yearlings. He paid witness two of those yearlings, but had never paid him the third.

Cross examined, the witness said that he stopped two nights in Shackelford county with a "cow outfit," of which Mike Kegans and Payt. Parker were members. This was in the summer of 1886. On one of those nights the camping place was on Bluff creek, and on the other at the "7W" ranch. The witness denied that, on either of those nights, he told Mike Kegans, in the presence of Payt. Parker, that he, witness, had a JSP cow in Haskell county, and that he wanted said Mike Kegans to get up and sell the said cow, so that he, witness, could get something for her. At that time the witness had sold to the WOO Cattle Company all the JSP cattle he could gather, and did not know that he had an animal in that brand in Haskell county. Witness also denied that at the "7W" ranch, about a year before the date of this offense, he told the defendant, in the presence of Jimmie Payne, that he, witness, had a JSP cow in Haskell county, and that he wanted defendant to get her up for him. He did tell the defendant on that occasion that he had a steer in Haskell county, and that he wanted him, defendant, to send that steer to him, witness, to be shipped with the "7W" cattle. The witness came from Shackelford county to Haskell county to testify before the grand jury about this case, deputy sheriff L. F. Tucker coming with him. He did not, on that trip, tell the said Tucker that he did not know what the grand jury wanted with him unless it was about the cow defendant got; that he had told defendant and Mike Kegans to look after his cattle in Haskell county, and that he had given them permission to sell his cattle. Witness never authorized defendant to put his, defendant's, brand on any of his, witness's, cattle. The defendant and Mike

Kegans were brothers, and were cousins of the witness. The witness and the Kegans boys had worked the cattle range together for a long time, and had branded cattle for each other.

Deputy Sheriff Tom Tucker testified, for the State, that the defendant was not in Haskell county at the time this indictment was found, nor until about two months before this trial. He was engaged in "cattle working," and "cattle workers," unless in charge of a good steady job, rarely ever remain long in one county.

The State closed.

R. W. Barrett testified, for the defense, that in December, 1886, he and defendant were partners in the butcher business in Haskell county, Texas. About that time the witness delivered to the defendant a certain sorrel horse, and directed him to trade off the said horse for cattle. That horse passed out of the possession of the witness, and defendant brought five head of cattle into the business. The witness only knew from the statement of Mike Kegans and the defendant what the defendant did with the horse, and what cattle he obtained, and from whom he obtained them. On his cross examination the witness said that he was a deputy sheriff at the time this bill of indictment was found. Defendant was not then in Haskell county, but, as the witness understood, was at work on the "7W" ranch. On re-examination the witness said that, some time after the indictment was returned, he received a letter from the defendant asking if it was true that he had been indicted for cattle theft, and stating that, if true, he wanted to return to Haskell county to meet the charge.

Jimmie Payne testified, for the defense, that about a year before the date alleged in this indictment he met the defendant and S. J. Pate at the "7W" ranch. He heard a conversation between defendant and said Pate, in the course of which, as well as witness could remember, Pate told defendant to get a steer and other cattle of his, Pate's, then running in Haskell county, and send them to him in time to ship them with the WOO cattle.

Tom Tucker testified, for the defense, that, as deputy sheriff, he took S. J. Pate from Shackelford county to Haskell county, under attachment to go before the grand jury in regard to theft charged in this indictment. On the way S. J. Pate said to witness: "I don't know what the grand jury wants with me unless it is about the cow that John (defendant) got. I told John

and Mike Kegans to look after my cattle in Haskell county, and let me know about them." He also, in the same conversation, said something about having authorized the Kegans boys to sell his cattle, but witness, who at that time was tired, sleepy and inattentive, did not understand what he said about it—whether he gave or withheld his consent for the Kegans to sell his said cattle.

Amos Coffman testified, for the defense, that about the middle of September, 1886, he witnessed a trade between the defendant and Mike Kegans. That trade occurred in the town of Haskell. Defendant gave Mike Kegans a certain sorrel horse, for which Mike gave him five head of cattle, including a JSP cow, by range delivery.

On his cross examination, the witness said that he once lived in Barber county, Kansas, where he passed under the name of A. S. Coffman. He had never been arraigned in the district court of Barber county, Kansas, nor convicted in that court of forgery. The witness was not the Amos S. Kaufman alluded to in the copy of the judgment of the district court of Barber county, Kansas, now placed in evidence, which said judgment recites the conviction of Amos S. Kaufman for forgery, and the assessment against said Amos S. Kaufman of a term of one year in the penitentiary of Kansas.

The defense closed.

In rebuttal, the State proved by his honor, the presiding judge, by J. E. Cockrell, E. J. Hamner, H. R. Jones and Oscar Martin that, on a previous and different proceeding in this court, the witness Amos Coffman testified that he was the identical Amos S. Kaufman alluded to in the copy of the judgment of the district court of Barber county, Kansas.

*E. J. Hamner*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE PRESIDING JUDGE. Most of the questions so earnestly and ably presented in the oral argument and brief of counsel for appellant are of a character not likely to arise at another trial of this case, and consequently will not be discussed by us.

Serious complaint is made of the sixth paragraph of the charge of the court to the jury. It is claimed that there is no evidence in the case authorizing, much less calling for, such an

instruction, and moreover it is contended that said instruction is not abstractly correct as law. We are not prepared to say that the charge was not called for by the evidence; on the contrary, there was evidence tending to show that defendant and other parties conspired to fix up and prove a purchase of the animal after it was taken possession of by defendant. And whilst the said instruction is awkwardly expressed, perhaps, we are clearly of opinion that, when critically scanned, the doctrine it announces is a correct principle in law. We do not think said instruction is obnoxious to either of the objections urged to it.

We are of opinion, however, that the court erred in excluding the testimony of the witness Barrett, as shown by defendant's bill of exceptions No. 2. Barrett and defendant were partners in the butcher business. Barrett authorized defendant to trade a certain horse of his for cattle. Defendant proposed to prove by Barrett that he, defendant, had told Barrett that he had traded said horse to one Mike Kegans for five head of cattle, four of which had been delivered, and that the other was a JSP cow, running upon the range. Defendant also proposed to prove by Barrett that Mike Kegans had also informed him, witness, of the same facts.

In explaining his ruling in excluding this evidence the learned judge places it upon the ground that defendant's statements to Barrett were made before he was charged with the theft, and that when his right to the animal was first questioned he gave a different account of his ownership. We take a different view of the matter. Defendant explained to Barrett how he had traded the horse, and what cattle he had traded him for. This was just after he had made the trade and when he first asserted any claim or ownership of the animal in question. It was in fact an explanation of his right to the possession of the animal, though that right may not have been then controverted or called in question. As to the conflict in the account he then gave and that subsequently made by him, it seems that in the first instance he claimed to have purchased it from Mike Kegans, and in the second, to have gotten it from Pate, the owner. This discrepancy may be reconciled by the fact that Mike Kegans claimed to have gotten it from Pate and sold it as Pate's agent to defendant, and in this light it may be said that defendant got it from Pate.

The importance of Barrett's testimony is apparent, especially

in view of the fact that the jury, after they had been in retirement some time considering of their verdict, came into court and asked to have him recalled to the witness stand, to know if he had not stated in evidence "that one of the cows John Kegans bought for him was a JSP cow on the range." In answer to their request the court replied that the evidence had been excluded from their consideration, it being inadmissible. Because of error in the exclusion of this evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 22, 1889.